IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

GORDON K. FORD,                    )
                                   )
               Plaintiff,          )
                                   )
v.                                 )   Case No. CIV-08-220-KEW
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security Administration,           )
                                   )
               Defendant.          )

## OPINION AND ORDER

Plaintiff Gordon K. Ford (the "Claimant") requests judicial

review of the decision of the Commissioner of the Social Security

Administration (the "Commissioner") denying Claimant's application

for disability benefits under the Social Security Act.   Claimant

appeals the decision of the Administrative Law Judge ("ALJ") and

asserts that the Commissioner erred because the ALJ incorrectly

determined that Claimant was not disabled.   For the reasons

discussed below, it is the finding of this Court that the

Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the

"inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A).   A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 15, 1963 and was 44 years old at the time of the ALJ's decision. He completed his high school education. Claimant has engaged in past relevant work as a tire repairman and discussed past work as a supervisor in a plastic injection plant. Claimant alleges an inability to work beginning

December 1, 2005 due to anxiety and pain in his left side and extremities.

## Procedural History

On December 30, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications for benefits were denied initially and upon reconsideration. On April 19, 2007, Claimant appeared at a hearing before ALJ Charles Headrick in Tulsa, Oklahoma. By decision dated May 25, 2007, the ALJ found Claimant was not disabled at any time through the date of the decision. On April 25, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform his past work as a plastic molder. The ALJ also found at step five that Claimant could perform light work as a bench assembler and sedentary work as a screener/circuit board

assembler.

## Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) failing to develop the record by obtaining treatment records and failing to obtain a mental health examination; (2) finding Claimant retained the RFC to perform his past relevant work as a plastic molder; and (3) failing to include all of Claimant's limitations at step five

## Duty to Develop the Record

On September 7, 2004, Claimant was treated by Dr. Mike Kemp for hypertension, panic disorder, and chronic anxiety. Claimant was treated with medication. He complained of frequent anxiety attacks, nervousness, and chest pain. (Tr. 211-12). By an October 21, 2004 visit, Claimant's condition was diagnosed by Dr. Kemp as panic disorder, improved, chronic anxiety, stable, and hypertension, controlled. (Tr. 207-08).

On November 30, 2004, Claimant again saw Dr. Kemp with complaints that he feels like he is going to explode, he is overwhelmed, and he had to leave his job from time-to-time because of anxiety. (Tr. 205). Treatment continued with medication. (Tr. 206). At a December 14, 2004 visit with Dr. Kemp, Claimant reported he went back to work and felt improvement. (Tr. 204-05).

5

On January 18, 2005, Claimant complained of nervousness, anxiety, dizziness, body aches, neck pain, back pain, and a lack of strength. Dr. Kemp diagnosed fibromyalgia and degenerative disk disease. (Tr. 193).

On March 21, 2005, Claimant was again attended by Dr. Kemp with elevated blood pressure and heart rate. He was diagnosed with chronic anxiety, stable, mild panic disorder, stable, hypertension, poorly controlled - off medication, and myalgias and muscle spasms. (Tr. 201). He reported that he has missed a fair amount of work because of his panic disorder. Id.

On May 20, 2005, Claimant reported having problems with spasms and aching all over. He sometimes had trouble getting out of bed and going to work. He said he felt nervous because he is afraid they will ask for money he owes them. He felt foggy and groggy and his body doesn't want to do anything but stay at home in bed. Dr. Kemp's diagnosis remained consistent with chronic anxiety, a history of panic disorder, arthralgias and muscle spasms, and hypertension. (Tr. 199).

On July 1, 2005, Claimant reported to Dr. Kemp he was not doing well. He was anxious and panicky most of the time. He stated he gets real anxious at times and passes out. He experiences chest pain, shortness of breath, and feels nervous all

of the time.   Claimant told Dr. Kemp he could not afford a psychiatrist.   Dr. Kemp diagnosed Claimant with chronic anxiety, panic disorder somewhat worsened, probable depression, arthralgias and muscle pains, stable, hypertension, not controlled as Dr. Kemp would like.   (Tr. 197).

On October 18, 2005, Claimant reported chronic pain from "ears down to feet."   Dr. Kemp diagnosed Claimant with fibromyalgia and degenerative disk disorder.   (Tr. 194).

On September 5, 2006, Claimant presented to Dr. Jimmie W. Taylor for a consultative examination.   Claimant stated he was unable to work due to anxiety attacks, nervous, sweats a lot, gets dizzy and passes out.   He stated he did not drive, has neck and low back pain, fatigues easily, and has muscle spasms all of the time. (Tr. 234).   Dr. Taylor diagnosed Claimant with panic attacks, agoraphobia, generalized anxiety disorder, hypertension, gastric esophageal reflux disease, history of lower eyelid cancer and generalized aches and pain probable secondary to osteoarthritis or degenerative joint disease.   (Tr. 236).

On November 15, 2006, Claimant returned to Dr. Kemp with high blood pressure.   Dr. Kemp continued his diagnosis of fibromyalgia, panic attacks, and anxiety.   He continued treating Claimant with medication.   (Tr. 243).

7

Claimant first contends the ALJ should have obtained records from Dr. Maderas at the Eastern Oklahoma Medical Clinic since Claimant identified Dr. Maderas as a treating physician in his filings with Defendant and in testimony at the administrative hearing. (Tr. 25, 172). The record is devoid of any records from either Dr. Maderas or the Clinic.

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court,

however, is not required to act as a claimant's advocate. <u>Henrie</u>, 13 F.3d at 361. Further, in cases where the claimant was represented by counsel at the hearing before the ALJ, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." <u>Branum v. Barnhart</u>, 385 F.3d 1268, 1271 (10th Cir. 2004) citing <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1167 (10th Cir. 1997); *See also*, <u>Maes v. Astrue</u>, 522 F.3d 1093, 1096-97 (10th Cir. 2008).

The ALJ was on notice Claimant was treated by Dr. Maderas and he should have obtained any records from that treatment prior to rendering a decision. The failure to do so violated his obligation to develop the record.

Claimant also urges that the ALJ should have obtained the opinion of a mental health specialist prior to making a determination. On remand, the ALJ shall consider ordering a consultative mental health examination of Claimant.

### Past Relevant Work

Claimant argues the ALJ improperly found he could perform past relevant work as a plastic molder. Claimant had not previously

reported having been employed in the plastics industry. At the hearing, Claimant made mention of such employment as a supervisor in a plastic injection plant. (Tr. 37). However, he testified he did no production work and assigned work to others and did paperwork. This is the only mention in the record of this past employment.

At step four, the ALJ is required to (1) assess a claimant's RFC; (2) determine which of claimant's jobs constitute past relevant work and make specific findings regarding the nature and demands of that work; and (3) perform a function-by-function comparison between the limitations and the demands of the work. Soc. Sec. R. 82-62. In his decision, the ALJ failed to engage in this required analysis - primarily, it would seem, because little evidence existed in the record concerning this vague past work experience described by Claimant at the hearing. Without more evidence and the required analysis, the ALJ's finding regarding Claimant's ability to perform his past relevant work is not supported by substantial evidence. On remand, the ALJ shall develop the record further on the nature of the past job and set out the required analysis under Ruling 82-62.

**Step Five Evaluation**

Claimant also contends the ALJ failed to include his mental

health limitations in determining his ability to perform other jobs at step five. On February 16, 2006, Dr. Lynette Causey completed a Mental Residual Functional Capacity Assessment form on Claimant. The questioning of the ALJ of the vocational expert did not contain all of the restrictions imposed by Dr. Causey on this form.

A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is required to accept and include in the hypothetical question only those limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). However, "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) quoting Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir. 1990). Since the ALJ's hypothetical questioning was non-inclusive of all of Claimant's limitations, the testimony cannot be used to support the ALJ's RFC finding at step five. On remand, the ALJ shall include those limitations in any questioning of a vocational expert.

## Conclusion

11

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 29th day of September, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE